UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| SCOTTY'S HOLDINGS, LLC,[1]  ) | Case No. |
| ) | (Jointly Administered) |
| ) | |
| Debtors.  ) | |

**MOTION FOR AN ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN SECURED POST-PETITION FINANCING, AND (II) GRANTING RELATED RELIEF**

Scotty's Holdings, LLC, and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Reorganization Cases"), hereby respectfully request entry of an order authorizing the Debtors to obtain post-petition financing in an aggregate principal amount up to $600,000 (the "DIP Loan") from Sase Kosan, K.K. ("New Lender") under the terms and conditions stated in the proposed form of Order attached to this Motion as **Exhibit 1** (the "Order"). The relief requested in this Motion includes the granting of non-priming liens in all of the Debtor's assets (subject to existing valid and perfected, non-avoidable security interests and liens) as security for DIP financing, as well as first priority liens in any unencumbered assets (if any) which may be pledged by the Debtors under applicable law.

The relief requested is supported by: (i) sections 105(a), 364(c), and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"); (ii) Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure; (iii) S.D.Ind. B-4001-2 of the Local Rules

---

[1] The Debtors include Scotty's Holdings, LLC, Case No. 18-09243-JJG-11 (the "Lead Case"); A Pots & Pans Production, LLC, Case No. 18-09244-JJG-11; Scotty's Thr3e Wise Men Brewing Company, LLC, Case No. 18-09245-JJG-11; Scotty's Brewhouse, LLC, Case No. 18-09246-JJG-11; Scotty's Brewhouse Bloomington, LLC, Case No. 18-09248-JJG-11; Scott's Brewhouse West Lafayette, LLC, Case No. 18-09250-JJG-11; Scotty's Indianapolis, LLC, Case No. 18-09251-JJG-11; Scotty's Brewhouse Downtown Indianapolis, Case No. 18-09252-JJG-11; Scotty's Brewhouse Mishawaka, LLC, Case No. 18-09253-JJG-11; Scotty's Brewhouse Fort Wayne, LLC, Case No. 18-09255-JJG-11; Scotty's Brewhouse Carmel, LLC, Case No. 18-09256-JJG-11; Scotty's Brewhouse Butler, LLC, Case No. 18-09257-JJG-11; and Scotty's Brewhouse Waco, LLC, Case No. 18-09258-JJG-11.

adopted by the United States Bankruptcy Court for the Southern District of Indiana (the "Court"); (iv) the *Declaration of Berekk Blackwell* (the "Blackwell Declaration") attached hereto as **Exhibit 2**; (v) the facts and authorities set forth below; and (vi) the entire record presently before the Court in this matter.

**I.       JURISDICTION AND VENUE.**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and S.D.Ind. L.R. 83-8(a) of the United States District Court for the Southern District of Indiana.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are Bankruptcy Code §§ 105(a) and 364(c)(1), 364(c)(2), 364(c)(3), and 507 and Bankruptcy Rules 2002, 4001(c) and 9014.

**II.      FACTUAL AND PROCEDURAL BACKGROUND.**

5. On December 11, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in the Reorganization Cases, and no statutory committees have been appointed or designated.

6. Each of the Debtors other than Scotty's Holdings, LLC and A Pots & Pans Production, LLC owns and operates a "Scotty's Brewhouse" bar and restaurant location, a 22-year-

2

old craft beer/sports bar restaurant concept or a "Thr3e Wise Men Brewing Company" restaurant/bar.

7. Debtor A Pots & Pans Production, LLC ("P&P Management") provides consolidated management functions for all of the Scotty's Brewhouse locations owned by the Debtors. Those management services include operational support, marketing, human resources, and accounting management. P&P Management also manages other Scotty's Brewhouse locations that are not affiliated with Debtors but that utilize the "Scotty's Brewhouse" name.

8. Scotty's Holdings, LLC owns 100% of the membership interests in each of the twelve other Debtors. Holdings is wholly owned by non-debtor PRP Scotty's Holdings, LLC. The sole manager of each of the Debtors is Berekk A. Blackwell.

9. A description of Debtors and their businesses, and the facts and circumstances supporting this Motion and the Reorganization Cases, are set forth in greater detail in the *Declaration of Berekk Blackwell* filed on December 12, 2018 [Dkt. No. 4] (the "First-Day Declaration") which is incorporated by reference herein.

10. As set forth in the First-Day Declaration, the Debtors collectively employ over 600 individuals in their restaurant businesses. Through restaurant operations and management fees generated through the management of unaffiliated non-debtor restaurants, the Debtors generate gross revenue of $1.2 - $1.5 million per month (and thus annual revenue in excess of $15 million).

11. The Court entered the *Interim Order Authorizing Use Of Cash Collateral, Granting Adequate Protection, Other Related Relief, And Scheduling Further Hearing For Final Approval* (the "Cash Collateral Order") on December 17, 2018 [Dkt. No. 57], pursuant to which the Debtors are authorized to use cash collateral for the interim period through January 17, 2019 in accordance with the budget (the "Budget") attached thereto.

12. As shown on the Budget, the Debtors' largest expenses are payroll, rent, food and alcohol deliveries. Payroll is paid every 2 weeks, and rent is paid generally in the first week of each month. Moreover, the Debtors' revenue is largely based on credit card transactions from its customers. The funds from such transactions are not received immediately, but route through a credit card processor and are paid on approximately a 2 - 3 day lag. For example, credit card transactions generated on Friday, Saturday, and Sunday are not received by the Debtors until Monday, and typically is a substantial deposit from the processor.

13. However, due to this delay, while the Debtors may be generating substantial revenue, significant expenses such as payroll, rent, and food/alcohol deliveries can all be due on the same day. This can create a temporary cash shortfall pending the deposit of the credit card receivables already generated.

14. In addition, during these Chapter 11 cases, the Debtors will temporarily incur substantial professional fees, U.S. Trustee's fees, and costs associated with a Chief Restructuring Officer ("CRO"),[2] who is required by the New Lender as a condition of making the DIP Loan. *See* further discussion below. The Court is also requiring a claims and noticing agent, which will add additional administrative expenses to these proceedings.

15. These additional monthly expenses, along with the potential cash shortfalls created by the timing of multiple large operating expenses (falling on the same or back-to-back days)

---

[2] The CRO will have more of an oversight role in this case than a traditional CRO. The Term Sheet executed with the New Lender describes the CRO's duties and authority as follows: "to provide oversight in connection with the operation, management and the restructuring of the Debtors' business. The CRO shall be consulted in connection with, and have ultimate decision-making authority with respect to, the material matters outside of the ordinary course of the Debtors' business, including the assumption or rejection of leases and the disposition of material assets. The CRO shall also be consulted and shall have input on the restructuring of the Debtors' liabilities, including development of a plan of reorganization. It is not contemplated that the CRO will engage in the day-to-day management of the restaurant operations. For the avoidance of doubt, the Manager of Scotty's Holdings shall keep the CRO informed and provide regular reports at the CRO's request. The CRO shall be authorized to communicate directly with the DIP Agent, the DIP Lenders, and the Debtors' other creditors. The CRO shall be entitled to access to all financial records, including books and records and banking records (with electronic access), and management shall consult with the CRO with respect to any material payments and the preparation of budgets and variance reports." *See* Term Sheet at Annex II.

create a substantial need for the DIP Loan during these Reorganization Cases to cover shortfalls and put the Debtors on solid footing to exit Chapter 11. The DIP Loan is also available to cover a portion of accruing administrative fees and costs, including the allowed fees and costs of the Debtors' professionals.

16. The Debtors have agreed that Hotta Liesenberg Saito LLP dba HLS Global ("HLS") shall be retained by the Debtors as the CRO. HLS has agreed to hourly rates of $150 to $180 per hour, and estimates incurring 30-60 hours per month in its role (i.e., approximately $5,000 - $10,800 per month for its work (with any partial month to be pro-rated), to be paid on or before the 7th day of each month for the prior month's work. A separate application to employ HLS will be filed with the Court.

17. The CRO will not manage the Debtors' day-to-day operations, but will have full access to the Debtors' books and records, banking records, and other similar documents. The CRO will participate in budgeting, monitoring the flow of cash and any intercompany transfers, and will be authorized to communicate directly with the New Lender and the Debtors. The CRO will also have authority to approve non-ordinary course transactions, such as the sale of assets or rejection of leases (other than the 4 locations already subject to rejection). It is anticipated that the DIP Loan proceeds will be available to pay the fees and costs associated with the CRO to the extent there is not sufficient cash flow in the cash collateral budgets. Indeed, the DIP Lender is requiring a revised budget, which will include line items for professional fees, and variance reporting against such budget.[3]

---

[3] The DIP Loan budget is required for a 13 week period commencing on January 7, 2019. To allow the Debtors to have more precise forecasts relating to the DIP Loan Budget, the Debtors intend to file this budget with the Court on or before January 7, 2019, which will be 10 days in advance of the proposed hearing date of January 17, 2019. This will allow the Debtors to evaluate their post-petition performance (and in particular, such performance after the 4 non-performing locations have closed) and better forecast their revenues and expenses going forward.

5

18. New Lender holds the majority equity interest in the Debtors (indirectly). Notwithstanding such interest, New Lender is not the manager of any of the Debtors and has never managed any of the Debtors. New Lender has effectively been a passive investor in the Debtors.

19. New Lender has agreed to make the DIP Loan, in part, to ensure the Debtors do not enter a liquidation. In the event of a liquidation, the restaurant assets would likely sell for pennies on the dollar, and no creditors would be paid in full.

20. The terms of the DIP Loan are favorable to the Debtor under the circumstances. The primary business terms are as follows:

(i) maximum principal amount – $600,000.

(ii) interest rate – 7.0% per annum.

(iii) commitment fee – 2.0%, to be paid at maturity.

(iv) maturity date – 180 days from entry of an interim order approving this Motion or upon the effective date of any plan of reorganization.

(v) repayment terms – at the option of the Debtors, monthly interest payments or the Debtors may add the accrued interest to the principal balance and pay at maturity.

(vi) security – first liens and security interests in any *unencumbered* assets (if any) of the Debtors (except for avoidance actions as described in the proposed Order), and junior liens and security interests in all other assets of the Debtors (except for avoidance actions as described in the proposed Order). The liens to be granted to New Lender will not prime any existing liens.

(vii) super-priority administrative claim status under Section 507(b), except for specific carve-outs provided for the Debtors' professionals, any unsecured creditor's committee's professionals, and U.S. Trustee's fees. Such super-priority claims

would also share pari-passu with the super-priority claims (if any) of any prepetition secured creditor.

(viii) certain mandatory prepayment events, including upon the sale of substantially all of the Debtors' assets.

(ix) entry of the Interim Order on or before January 18, 2019; Final Order entered 30 days thereafter.

A true and correct copy of the Term Sheet entered into by the Debtors and New Lender is attached hereto as **Exhibit 3**. The foregoing summary of the material terms of the DIP Loan is merely a summary and is not comprehensive as to all terms, which are too voluminous to restate in this Motion. All parties are directed to review the Term Sheet in its entirety.

21. The DIP Loan will be formally evidenced by a "Promissory Note (DIP Loan)" (the "DIP Note") and a "Security Agreement (DIP Loan)" (the "DIP Security Agreement"), which are in the process of being documented consistent with the Term Sheet. The New Lender and Debtors shall file the form of the DIP Note and the DIP Security Agreement no later than 10 calendar days prior to any hearing to approve the DIP Loan. The Debtors and New Lender request that any objections to the form of the DIP Note and DIP Security Agreement be filed no later than 2 business days prior to the final hearing. If the DIP Loan is approved, then the parties will execute the DIP Note and DIP Security Agreement which, along with any final order, will govern the borrower/lender relationship of the parties.

22. As described in the Blackwell Declaration, the Debtors attempted to raise capital during the six months leading up to the Petition Date and were unable to do so. Given the Debtors' current financial condition, the Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code §503(b)(1) as an administrative expense, and the Debtors are unable to obtain post-petition financing on terms more favorable than those provided with respect to the DIP Loan.

**III.     RELIEF REQUESTED.**

23.     The Debtors request that the Court authorize the DIP Loan on a final basis on the terms provided in the Term Sheet and the proposed Order.

24.     A debtor-in-possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to obtain financing in accordance with Section 364 of the Bankruptcy Code. *See* 11 U.S.C. §1107(a). Section 364(c) provides that if a debtor-in-possession is unable to obtain credit allowable under §§ 503(b)(1) and 364(b) as an administrative expense, then a court may authorize postpetition financing:

>  (1)    with priority over any or all administrative expenses of the kind specified in § 503(b) or 507(b) of this title;
>
>  (2)    secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
>  (3)    secured by a lien on property of the estate that is subject to a lien.

*See* 11 U.S.C. § 364(c). In order to obtain court approval for proposed postpetition financing under § 364(c), the debtor must establish: (i) that it is unable to obtain unsecured credit under § 364(a) or (b); (ii) that, if necessary, other creditors holding liens on the property of the debtor that would be subject to the post-petition lien are adequately protected, and (iii) that the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor and the proposed lender. *See In re Crouse Group*, *Inc.*, 71 B.R. 544 (Bankr. E.D. Pa. 1987); *In re Ames Department Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990); *In re Phase-I Molecular Toxicology, Inc.*, 285 B.R. 494, 495-496 (Bankr. D.N.M. 2002). In this instance, the Debtor satisfies all of these elements.

25.     In order to satisfy the requirement that a debtor have been unable to obtain financing under §§ 364(a) or (b), the debtor need not seek credit from every possible source, but rather merely needs to establish that it made an effort to obtain financing from alternative sources.

8

*Phase-I Molecular*, 285 B.R. at 496; *Ames Department Stores*, 115 B.R. at 40. Under the circumstances, the proposed DIP Loan represents the best financing terms available to the Debtors. The Debtors' manager, Berekk Blackwell, states in the Blackwell Declaration that the Debtors have been attempting to raise funds or obtain financing for 6 months without success. Given the urgency of the situation and the filing of Chapter 11, the Debtors do not have the benefit of time to continue looking. Moreover, the New Lender is unwilling to provide funding to the Debtors without receiving a first priority lien on unencumbered assets (if any), a junior lien on other assets, and a super-priority claim pursuant to § 364(c)(1).

26. Any existing secured creditors are not being impaired by the proposed terms. The Secured Creditors' liens are not being primed, and maintain their existing priority status. New Lender will only benefit from the proposed junior lien if there is equity in the collateral.

27. In addition, the terms are fair and reasonable. When analyzing whether financing terms are fair and reasonable "Courts should permit debtors to exercise their reasonable judgment "so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest." *In re Farmland Industries, Inc.*, 294 B.R. 855, 884 (Bankr. W.D. Mo. 2003) *quoting Ames Dept. Stores,* 115 B.R. at 40 (Bankr. S.D.N.Y. 1990).

28. The DIP Loan in this case satisfies the fair and reasonable standard. In particular, the DIP Loan offers a substantial credit facility at 7% interest, meaning the DIP Loan is proposed at a fixed rate of prime (5.5% currently) plus 1.5%. The 2% commitment fee that is not atypical for this type of loan. The DIP Loan allows interest and the commitment fee to be carried to the maturity date, freeing up cash flow during the Reorganization Cases.

29. The Debtors simply do not have access to unsecured credit in the amount of $600,000. The DIP Loan is needed to ensure the Debtors have available funding to pay its

9

operating expenses and reorganization expenses to facilitate a successful reorganization. Under these circumstances, the proposed DIP Loan is necessary and beneficial to the Debtors and their estates, and should be approved by the Court.

**IV.    NOTICE.**

30.    Notice of this Motion has been provided to the following parties: (a) the Service List, as defined in S.D. Ind. B-1000-1(b)(10), including (i) the Office of the United States Trustee and (ii) the holders of the twenty (20) largest unsecured claims against the Debtors (excluding insiders); (b) The Huntington National Bank; and (d) Rewards Network.  Notice of this Motion and any order entered hereon will be served in accordance with S.D.Ind. B- 9013-3(d). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

RESPECTFULLY SUBMITTED this 27th day of December, 2018.

HESTER BAKER KREBS LLC

By /s/ *John J. Allman*
John J. Allman
One Indiana Square, Suite 1600
Indianapolis, IN 46204
(317) 833-3030
Fax: (317) 833-3031
Email: jallman@hbkfirm.com
*Proposed Attorneys for Debtors*

# CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2018, a copy of the foregoing *Motion for an Order (I) Authorizing the Debtors to Obtain Secured Post-Petition Financing, and (II) Granting Related Relief* was filed electronically. Notice of this filing will be sent to the following party/parties through the Court's Electronic Case Filing System. Party/Parties may access this filing through the Court's system.

| | |
|---|---|
| U.S. Trustee | ustpregion10.in.ecf@usdoj.gov |
| Harrison E. Strauss | harrison.strauss@usdoj.gov; lora.l.hurlbert@usdoj.gov |
| Ronald J. Moore | ronald.moore@usdoj.gov |
| John J. Allman | jallman@hbkfirm.com; dadams@hbkfirm.com |
| Jason R. Burke | jburke@bbrlawpc.com; kellis@bbrlawpc.com |
| Christopher C. Hagenow | chagenow@bbrlaw.com; kellis@bbrlawpc.com |
| Aaron E. Davis | aaron.davis@bclplaw.com; kathryn.farris@bclplaw.com; chdocketing@bclplaw.com |
| Anthony J. Jost | tjost@rbelaw.com; baldous@rbelaw.com; tbutton@rbelaw.com |
| Harley K. Means | hkm@kgrlaw.com; kwhigham@kgrlaw.com; cjs@kgrlaw.com; tjf@kgrlaw.com |
| Jay P. Kennedy | jkennedy@kgrlaw.com; tfroelich@kgrlaw.com; srosner@kgrlaw.com; jli@kgrlaw.com |
| Craig S. Ganz | ganzc@ballardspahr.com |
| John R. Humphrey | jhumphrey@taftlaw.com; aolave@taftlaw.com |
| Meredith R. Theisen | mtheisen@rubin-levin.net; atty_mtheisen@bluestylus.com; mralph@rubin-levin.com |
| Deborah Caruso | dcaruso@rubin-levin.com; dwright@rubin-levin.com; jkrichbaum@rubin-levin.com; atty_dcaruso@bluestylus.com |
| John M. Mead | jmead@indylegal.net; cweaver@indylegal.net |
| Jeffrey A. Hokanson | jeff.hokanson@icemiller.com; kathy.peed@icemiller.com |
| John Cannizzaro | john.cannizzaro@icemiller.com; deborah.martin@icemiller.com |
| Amanda K. Quick | amanda.quick@atg.in.gov; darlene.greenley@atg.in.gov |
| Mary J. Fassett | mjf@mccarronlaw.com |

I further certify that on December 27, 2018, a copy of the foregoing *Motion for an Order (I) Authorizing the Debtors to Obtain Secured Post-Petition Financing, and (II) Granting Related Relief* was mailed by first-class U.S. Mail, postage prepaid and properly addresses, to the following:

N/A.

/s/ *John J. Allman*
John J. Allman