# EXHIBIT 3

*Confidential;*
*For Discussion Purposes Only*
*Not A Commitment To Lend*

## SUMMARY OF TERMS AND CONDITIONS OF $600,000
## DEBTOR-POSSESSION FACILITY (THE "DIP FACILITY")

*This Term Sheet outlines certain terms of a proposed debtor-in-possession financing and use of cash collateral for the Obligors (as defined below) in connection with chapter 11 cases proposed to be commenced in the Bankruptcy Court (as defined below). This Term Sheet is only an expression of interest in considering a financing transaction and sets forth terms and conditions that may or may not become part of a commitment or definitive agreement. It is not based on any existing agreement between the parties and is not intended to impose any obligation whatsoever on any party, including, but not limited to, any obligation to bargain in good faith or in any way other than at arm's length, and is not to be construed as a commitment, offer, agreement-in-principle or other agreement or understanding to provide financing.*

| | |
|---|---|
| **Borrower:** | Scotty's Holdings, LLC (the "**Borrower**"), a debtor-in-possession in a case to be commenced voluntarily under chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Indiana (the "**Bankruptcy Court**"). |
| **Guarantors:** | All obligations under the DIP Facility (defined below) will be absolutely, unconditionally and irrevocably guaranteed on a joint and several basis by the Borrower's direct and indirect subsidiaries, as set forth on <u>Annex I</u> hereto (collectively, the "**Guarantors**", and together with the Borrower, the "**Obligors**"). The Borrower and the Guarantors shall be debtors-in-possession in cases jointly administered cases (the "**Cases**") to be commenced under chapter 11 of the Bankruptcy Code. The date of the commencement of the Cases is referred to herein as the "**Petition Date**". |
| **Agent:** | Sase Kosan, K.K, in its capacity as administrative agent (the "**DIP Agent**"). |
| **Lenders:** | Sase Kosan, K.K and any additional lender that provides a commitment to participate in the DIP Facility (collectively, the "**DIP Lenders**"). |
| **Certain Pre-Petition Facilities:** | The certain credit facility by and among The Huntington National Bank, as lender, Scotty's Holdings, LLC (a Debtor in the Cases), and Due North Holdings, LLC (a non-Debtor in the Cases), as co-borrowers, and certain Debtors and non-Debtor individuals, as guarantors (the "**Huntington Loan Facility**"). |
| | The certain agreement with Rewards Network Establishment Services Inc. ("**Rewards Network**") whereby Rewards Network advanced $500,000.00 to the Debtors; however, the agreement is styled as a purchase of credit card receivables to be generated by |

|                              |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                |
|------------------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                              | various Debtors. The obligations owing to Rewards Network are secured by a lien in certain Debtors' assets. (the "**Rewards Facility**"; together with the Huntington Facility; the "**Pre-Petition Credit Facilities**") |
| **DIP Facility:**            | A delayed disbursement loan facility (the "**DIP Facility**") in an aggregate principal amount of $600,000 (the loans thereunder, the "**DIP Loans**"). All of the Obligors obligations under the DIP Facility shall be referred to as the "**DIP Obligations**"). The DIP Obligations shall be secured by the Collateral as set forth below. |
| **Purpose/Use of Proceeds:** | The proceeds of the DIP Facility will be used, in accordance with the terms of the Budget (as defined below) to provide working capital and for other general corporate purposes of the Obligors during the administration of the Cases, including the payment of administrative claims allowed in the Cases; provided, that the DIP Borrower may use proceeds to fund a professional fee reserve for the DIP Borrower's professionals in a segregated account of the Borrower (a "**Fee Reserve**") in an amount up to $10,000 per week from the Petition Date to be held in a segregated account of the Debtors and which may be accessed for the sole purpose of paying the fees and expenses of the Debtors' counsel retained in the Cases pursuant to any court order. |
|                              | No portion of the DIP Facility or the Carve-Out (as defined below), shall be used in connection with asserting any claims or causes of action against the DIP Agent, the DIP Lenders, or their respective advisors, agents and sub-agents, including formal discovery proceedings in anticipation thereof, and/or challenging any lien thereof. |
| **DIP Facility Availability:** | Commencing on the date (the "**Order Entry Date**") of the Bankruptcy Court's entry of the Order (as defined in Annex II attached hereto) the DIP Loans shall be available to the Borrower in an amount up to $600,000, in accordance with the Budget. The proceeds of the DIP Loans shall be deposited by the Borrower into a segregated account (the "**DIP Funding Account**") in the name of the Borrower. |
|                              | Subject to the terms hereof, the balance of the DIP Facility may be borrowed in amounts, and at intervals, to be set forth in the definitive documents relating to the DIP Facility (collectively, the "**DIP Loan Documents**"). |
| **Budget:**                  | "**Budget**" shall mean the rolling consolidated 13-week cash flow and financial projections of the Obligors covering the period beginning on January 7, 2019 and itemizing on a weekly basis all uses, and anticipated uses, of the DIP Facility, revenues projected to be received and all expenditures proposed to be made during such period and other cash flow and financial projections, which shall at all times be in form and substance reasonably satisfactory to the DIP Agent. |

|  |  |
|---|---|
|  | On or prior to the closing, the Obligors shall provide to the DIP Agent an initial Budget for the period beginning on January 7, 2019.  After entry of the Order, the Obligors shall provide to the DIP Agent, as soon as available but no later than 5:00 PM EST on the first and third Wednesday of each month, a Budget variance report/reconciliation report, which shall set forth (i) a comparative reconciliation, on a line by line basis, of actual cash receipts and disbursements against the cash receipts and disbursements forecasted in the initial Budget, and the percentage variance thereof, for (A) the weekly period ended on (and including) the immediately preceding Sunday and (B) the cumulative period to date, (ii) a written explanation of such variances, and (iii) projections for the following 13 weeks, including a rolling cash receipts and disbursements forecast for such period. |
|  | Other than to the extent otherwise permitted in the DIP Loan Documents, the Obligors shall not make or commit to make any payments other than those identified in the Budget.  On the last business day of any week, (i) payments for such cumulative period to date shall not exceed 112% of the amounts, on an aggregate basis, set forth for such cumulative period to date in the Budget and (ii) receipts for such cumulative period to date shall not be less than 88% of the amounts, on an aggregate basis, set forth for such cumulative period to date in the Budget. |
| **Amortization:** | None. |
| **Voluntary Prepayments:** | The Obligors may repay the loans under the DIP Facility upon not less than three (3) business days' notice, provided that in the case of repayment, each partial repayment shall be in an amount of $100,000 or multiples of $50,000 in excess thereof (or, if less, the outstanding amount of applicable loans).  Any amounts loaned and repaid may not be reborrowed. |
| **Mandatory Prepayments:** | Amounts outstanding under the DIP Facility shall be prepaid by the Obligors upon specified events, including: |

(a) <u>Asset Sales</u>: 100% of the net cash proceeds of the sale or other disposition of any Collateral (as defined below), other than in the ordinary course of business.

(b) <u>Equity Issuance</u>: 100% of the net cash proceeds of the issuance of any equity of the Obligors or any of their respective subsidiaries.

(c) <u>Insurance and Casualty Proceeds</u>: 100% of the net cash proceeds of insurance paid on account of any loss of any Collateral (other than any such proceeds received prior to the date of commencement of the Cases).

3

|  |  |
|---|---|
|  | (d) <u>Incurrence of Indebtedness</u>: 100% of the net cash proceeds received from the incurrence of additional indebtedness by the Obligors incurred following the Petition Date, other than (i) indebtedness incurred with third-party vendors in the ordinary course of business on terms that are the same or substantially similar to those received by the Obligors prior to the Petition Date and (ii) indebtedness, the proceeds of which shall be applied at closing to repay the DIP Obligations in full, in cash. |
|  | In each case, payments shall be made subject to any senior and perfected liens in respect of the Pre-Petition Credit Facilities. |
| **Maturity:** | All obligations outstanding under or in respect of the DIP Facility shall be repaid in full on the date (the "**Termination Date**") that is the earliest to occur of: (a) 180 days after the Petition Date, (b) the effective date of a chapter 11 plan that is confirmed pursuant to an order entered by the Bankruptcy Court in the Cases, or (c) the acceleration of the DIP Loans and the termination of the DIP Facility by the DIP Agent following the occurrence or during the continuation of an Event of Default and passing of any applicable cure periods. |
| **Interest Rate and Fees:** | As set forth on <u>Annex III</u>. |
| **Priority/Security:** | Subject to the Carve-Out, all obligations of the Obligors to the DIP Agent and the DIP Lenders, including, without limitation, all principal, accrued interest, costs, fees and expenses, shall: |
|  | (a) pursuant to Bankruptcy Code section 364(c)(1), be joint and several claims with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 (the "**Superpriority Claims**"); <u>provided</u>, <u>however</u>, that to the extent that the Bankruptcy Court grants a priority claim in respect of the diminution in value of the collateral secured by the Pre-Petition Credit Facilities, such claim may be pari passu with the Superpriority Claim; |
|  | (b) pursuant to Bankruptcy Code section 364(c)(2), be secured by a perfected first-priority lien on all now owned or hereafter acquired assets and property of the Obligors and proceeds thereof (including, without limitation, all cash, cash equivalents, accounts, payment intangibles, promissory notes, consignments, commercial tort claims, tax refunds, inventory, goods, chattel paper, documents, deposit accounts, documents, instruments, investment property, letter-of-credit rights, general intangibles, contracts, contract rights, all causes of action |

4

and proceeds thereof, computer hardware and software, motor vehicles, intellectual property, real and personal property, plant and equipment of the Obligors (collectively, the "**First Lien Collateral**")[1]; and

(c) pursuant to Bankruptcy Code section 364(c)(3), be secured by a perfected junior lien on all property of the Obligors and proceeds thereof (including, without limitation, all cash, cash equivalents, accounts, payment intangibles, promissory notes, consignments, commercial tort claims, tax refunds, inventory, goods, chattel paper, documents, deposit accounts, documents, instruments, investment property, letter-of-credit rights, general intangibles, contracts, contract rights, all causes of action and proceeds thereof, computer hardware and software, motor vehicles, intellectual property, real and personal property, plant and equipment of the Obligors) that is subject to valid, perfected and non-avoidable liens in existence at the time of the commencement of the Cases or to valid liens in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by Section 546(b) of the Bankruptcy Code, other than as set forth below (collectively, the "**Junior Lien Collateral**", and together with the First Lien Collateral, the "**Collateral**").

subject in each case only to a carve-out (the "**Carve-Out**") which shall be comprised of the following: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), and (ii) after the occurrence and during the continuance of an Event of Default (as defined below) (a) fees and expenses projected in the Budget and incurred by the Obligors' professionals prior to delivery of notice of an Event of Default and allowed by the Bankruptcy Court (the "**Carve-Out Notice**"), and (b) after delivery of a Carve-Out Notice, an amount not exceeding $175,000 in the aggregate, to pay any fees or expenses incurred by the Obligors' professionals, and (c) after delivery of a Carve-Out Notice, an amount not exceeding $25,000 in the aggregate, to pay any fees or expenses incurred by professionals retained by the Committee, provided that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described above. No portion of the Carve-Out, any cash collateral or proceeds of the DIP Facility may be used for the payment of the fees and expenses of any person incurred challenging, or in relation to the challenge of, any of the DIP Agent's or DIP Lenders' liens or claims, or the

---

[1] For the avoidance of doubt, First Lien Collateral includes the Fee Reserve and the DIP Funding Account.

5

|  |  |
|---|---|
|  | initiation or prosecution of any claim or action against the DIP Agent or any DIP Lender in any other capacity. |
|  | Further, for the avoidance of doubt, the Obligors shall be entitled to use any proceeds of the First Lien Collateral for any expenses in any approved budget unless and until an Event of Default has occurred which has not been cured (to the extent a cure is provided for herein). |
| **Representations and Warranties:** | The DIP Loan Documents will include such representations and warranties that are usual and customary for financings of this kind and that are reasonably acceptable to the DIP Agent, including without limitation: due organization; requisite power and authority; qualification; equity interests and ownership; due authorization, execution, delivery and enforceability of the DIP Loan Documents; no conflicts; governmental consents; historical and projected financial condition; no material adverse change (excluding any material adverse change resulting from or in connection with the commencement of the Cases and the events leading up to the Cases); no restricted junior payments; absence of material litigation (excluding the Cases); payment of material taxes; title to properties; environmental matters; Investment Company Act and margin stock matters; ERISA and other employee matters; absence of brokers or finders fees; compliance with laws; continued effectiveness of orders of the Bankruptcy Court, including the Order, as applicable; full disclosure and accuracy of Budget; and Patriot Act and other related matters. |
| **Covenants:** | The DIP Loan Documents will include such affirmative and negative covenants that are usual and customary for financings of this kind and that are reasonably acceptable to the DIP Agent, including, without limitation, compliance with the Budget, as described above (and subject to the variances referred to above). |
| **Events of Default:** | (a) The DIP Loan Documents will include events of default that are usual and customary for financings of this kind and that are reasonably acceptable to the DIP Agent (each, an "**Event of Default**"), including, without limitation, the following: |
|  | (b) The Order, in form and substance satisfactory to the DIP Agent, shall not have been entered by the Bankruptcy Court in form and substance reasonably satisfactory to the DIP Agent, approving and authorizing on a final basis the matters and containing the provisions described below; |
|  | (c) The CRO (as defined below) shall cease for any reason to be retained by the Debtors; provided, however, that to the extent the CRO resigns or is dismissed for cause, the Debtors shall have 10 business days to retain a replacement, whose identity and scope of services is |

6

      reasonably acceptable to the DIP Agent;

(d) a Debtor shall file a motion seeking to reject the unexpired lease of any location other than those located in Muncie, Downtown Indianapolis, Waco and Carmel (collectively, the "**Rejected Locations**") or with respect to the corporate office;

(e) any of the Cases (other than those relating to the Rejected Locations) shall be dismissed or converted to a chapter 7 Case; a trustee, receiver, interim receiver or receiver and manager shall be appointed in any of the Cases, or a responsible officer or an examiner with enlarged powers shall be appointed in any of the Cases (having powers beyond those set forth in Bankruptcy Code sections 1106(a)(3)); or any other super-priority administrative expense claim or lien (other than the Carve-Out and as otherwise provided herein or granted in respect of the Pre-Petition Credit Facilities) which is *pari passu* with or senior to the claims, charges or liens of the DIP Agent or the DIP Lenders;

(f) the Obligors shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any pre-petition indebtedness or payables, other than (i) adequate protection payments, authorized by the Court and made in respect of the Pre-Petition Credit Facilities, (ii) payments authorized by the Bankruptcy Court in respect of "first day" or other orders entered upon pleadings in form and substance reasonably satisfactory to the DIP Agent (including without limitation payments of pre-petition obligations to employees and payroll taxes, sales and use taxes and similar taxes, each to the extent approved by order of the Bankruptcy Court) and (iii) payments of franchise (and similar) taxes incurred prior to the Petition Date necessary to maintain their existence and qualification or good standing in their respective jurisdictions of formation and other jurisdictions in which they conduct business;

(g) the Bankruptcy Court shall enter an order granting relief from the automatic stay to any creditor or party in interest (i) to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any material assets of the Obligors (other than those in respect of the Rejected Locations) or (ii) to permit other actions that would have a material adverse affect on the Obligors taken as a whole or their estates;

(h) an order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying

7

the I Order, or any of the Obligors shall apply for authority to do so, without the prior written consent of DIP Agent;

(i) the Debtors shall fail to file a plan of reorganization and accompanying disclosure statement within 60 days after the Petition Date that either (i) provides for payment in full of the DIP Obligations as of the effective date of such plan, or (ii) are each in form and substance satisfactory to the DIP Agent;

(j) the Bankruptcy Court shall fail to enter an order in the Cases, in form and substance satisfactory to the DIP Agent, approving a disclosure statement, in form and substance satisfactory to the DIP Agent, within 120 days after the Petition Date or such order shall have been stayed, reversed, vacated or otherwise modified;

(k) the Bankruptcy Court shall fail to enter an order in the Cases, in form and substance satisfactory to the DIP Agent, confirming a plan of reorganization, in form and substance satisfactory to the DIP Agent, within 180 days after the Petition Date or such order shall have been stayed, reversed, vacated or otherwise modified;

(l) (1) a plan shall be proposed or confirmed in any of the Cases that (A) is not satisfactory in all respects to the DIP Agent or (B) does not provide for payment in full in cash of the Obligors' obligations under the DIP Loan Documents on the effective date of such plan of reorganization, compromise, arrangement or liquidation or (2) any order shall be entered which dismisses any of the Cases (other than those of the Rejected Locations) and which order does not provide for payment in full in cash of the Obligors' obligations under the DIP Loan Documents, or (3) any of the Obligors shall seek, support, or fail to contest in good faith the filing or confirmation of such a plan described in (1) above or the entry of such an order described in (2) above;

(m) Any DIP Loan Document shall cease to be effective or shall be contested by Obligors or any of their affiliates;

(n) Any of the Obligors shall fail to comply with the Order;

(o) The Obligors shall take any action in support of any of the foregoing, or any person other than the Obligors do so and such application is not contested in good faith by the Obligors and the relief requested is granted in an order that is not stayed pending appeal; and

(p) Such other usual and customary Events of Default that are reasonably requested by the DIP Agent and typical

8

|   |   |
|---|---|
| | for this type of financing. |
| **Remedies:** | The DIP Agent and the DIP Lenders shall have customary remedies, including, without limitation, the right (after providing 10 business days' prior notice to counsel of record to the Obligors, any Committee and any other statutory committees appointed in the Cases) following the occurrence of the Termination Date to realize on all Collateral without the necessity of obtaining any further relief or order from the Bankruptcy Court. The Bankruptcy Court shall retain exclusive jurisdiction with respect to all matters relating to the exercise of rights and remedies of the DIP Agent and DIP Lenders hereunder with respect to the Obligors, and under the Order, and with respect to the Collateral. |
| **Conditions Precedent to Borrowing:** | The obligation of the DIP Lenders to make their loans under the DIP Facility will be subject to customary closing conditions, including, without limitation, the applicable conditions precedent listed on Annex II attached hereto, and such other conditions as set forth herein. |
| **Ongoing Conditions to all Borrowings:** | The conditions to all borrowings will include requirements relating to prior written notice of borrowing, the accuracy of representations and warranties, the absence of any Default or Event of Default, and will otherwise be customary and appropriate for financings of this type and reasonably acceptable to the DIP Agent. |
| **Voting:** | Amendments and waivers with respect to the DIP Loan Documents shall require the approval of DIP Lenders holding at least 51% of the aggregate amount of the DIP Loan (the "**Required DIP Lenders**"), except that: (a) the consent of each DIP Lender directly affected thereby shall be required with respect to: (i) reductions in the amount or extensions of the scheduled date of final maturity of any DIP Loan; (ii) reductions in the rate of interest or any fee or extensions of any due date thereof; and (iii) increases in the amount or extensions of the expiry date of any DIP Lenders' commitment and (b) the consent of 100% of the DIP Lenders shall be required with respect to modifications to any of the voting percentages. |
| **Governing Law and Jurisdiction:** | The Obligors will submit to the non-exclusive jurisdiction and venue of the Bankruptcy Court, or in the event that the Bankruptcy Court does not have or does not exercise jurisdiction, then in any state or federal court of competent jurisdiction in the state, county and city of New York, borough of Manhattan; and shall waive any right to trial by jury. New York law shall govern the DIP Loan Documents (other than security documents to be governed by local law, to be determined by the DIP Agent). |
| **Indemnity:** | The Obligors shall indemnify, pay and hold harmless the DIP Agent and the DIP Lenders and their affiliates (and their |

|  |  |
|---|---|
|  | respective directors, officers, employees and agents) against any loss, liability, cost or expense incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof (except to the extent resulting from the gross negligence or willful misconduct of the indemnified party). |
| **Expenses:** | The Obligors shall pay (a) all reasonable out-of-pocket expenses of the DIP Agent associated with the preparation, execution, delivery and administration of the DIP Loan Documents and any amendments or waivers with respect thereto (including the reasonable fees, disbursements and other charges of counsel) and (b) all reasonable out-of-pocket expenses of the DIP Agent (including the fees, disbursements and other charges of counsel) in connection with the enforcement of the DIP Loan Documents, in each case, upon the Termination Date or the occurance of any Event of Default; it being understood that the Obligors may pay such amounts in cash or in-kind (*i.e.*, capitalized and added to principal). |
| **Counsel to DIP Agent:** | Mayer Brown LLP |

## ANNEX I

## LIST OF DEBTORS

| Name | Obligor Type | Bankruptcy Status | Jurisdiction of Organization |
|---|---|---|---|
| Scotty's Holdings, LLC | Borrower | Debtor | Delaware |
| A Pots & Pans Production, LLC | Guarantor | Debtor | Indiana |
| Scotty's Thr3e Wise Men Brewing Company, LLC | Guarantor | Debtor | Indiana |
| Scotty's Brewhouse Waco, LLC | Guarantor | Debtor | Texas |
| Scotty's Brewhouse Bloomington, LLC | Guarantor | Debtor | Indiana |
| Scotty's Brewhouse Downtown Indianapolis, LLC | Guarantor | Debtor | Indiana |
| Scotty's Indianapolis, LLC | Guarantor | Debtor | Indiana |
| Scotty's Brewhouse Mishawaka, LLC | Guarantor | Debtor | Indiana |
| Scotty's Brewhouse Fort Wayne, LLC | Guarantor | Debtor | Indiana |
| Scotty's Brewhouse Carmel, LLC | Guarantor | Debtor | Indiana |
| Scotty's Brewhouse Butler, LLC | Guarantor | Debtor | Indiana |

12

| Name | Obligor Type | Bankruptcy Status | Jurisdiction of Organization |
|---|---|---|---|
| Scotty's Brewhouse West Lafayette, LLC | Guarantor | Debtor | Indiana |
| Scotty's Brewhouse, LLC | Guarantor | Debtor | Indiana |

<u>ANNEX II</u>

**SUMMARY OF CONDITIONS PRECEDENT TO THE DIP FACILITY**

A. <u>CONDITIONS TO AVAILABILITY</u>

1. <u>Order/Bankruptcy Matters.</u>

    (a) The Bankruptcy Court shall have entered, upon motion in form and substance reasonably satisfactory to the DIP Agent, on such prior notice as may be reasonably satisfactory to the DIP Agent, an order (the "**Order**") no later than January 18, 2019, approving and authorizing the DIP Facility.

    (b) The Order shall not have been reversed, modified, amended, stayed or vacated, in the case of any modification or amendment, in a manner that is adverse to the interests of the DIP Agent or the DIP Lenders.

    (c) The Obligors shall be in compliance in all material respects with the Order.

    (d) The DIP Loan Documents shall have been entered into, and the DIP Agent and the DIP Lenders shall have perfection of liens and pledges on the Collateral securing the DIP Facility.

    (e) The Cases shall have been commenced in the Bankruptcy Court and all of the "first day orders" and all related pleadings to be entered at the time of commencement of the Cases or shortly thereafter shall have been reviewed in advance by the DIP Agent and shall be reasonably satisfactory in form and substance to the DIP Agent.

    (f) No trustee or examiner with enlarged powers shall have been appointed with respect to the Obligors or their respective properties.

    (g) No material adverse change in the operations, assets or financial condition of the Obligors taken as a whole (other than resulting from or in connection with the commencement of the Cases and the closing of the Rejected Locations) shall have occurred since the Petition Date.

2. <u>Budget/Information Requests/CRO.</u>

    (a) The DIP Agent shall have received the initial Budget and such other material information (financial or otherwise) they may reasonably request.

    (b) The Debtors shall have retained a Chief Restructuring Officer, whose identity and scope of services is acceptable to the DIP Agent (the "**CRO**"), to provide oversight in connection with the operation, management and the restructuring of the Debtors' business. The CRO shall be consulted in connection with, and have ultimate decision-making authority with respect to, the material matters outside of the ordinary course of the Debtors' business, including the assumption or rejection of leases and the disposition of material assets. The CRO shall also be consulted and shall have input on the restructuring of the Debtors' liabilities, including development of a plan of reorganization. It is not contemplated that the CRO will engage in the day-to-day management of the restaurant operations. For the avoidance of doubt, the Manager of

>Scotty's Holdings shall keep the CRO informed and provide regular reports at the CRO's request. The CRO shall be authorized to communicate directly with the DIP Agent, the DIP Lenders, and the Debtors' other creditors. The CRO shall be entitled to access to all financial records, including books and records and banking records (with electronic access), and management shall consult with the CRO with respect to any material payments and the preparation of budgets and variance reports.

3. <u>Performance of Obligations</u>.

   (a) All costs, fees, expenses (including, without limitation, legal fees) and other compensation contemplated by the DIP Loan Documents to be payable to the DIP Agent shall have been paid to the extent due and the Obligors shall have complied in all material respects with all of their other obligations to the DIP Agent and the DIP Lenders.

   (b) No Default or Event of Default shall exist.

   (c) All representations and warranties shall be true and correct in all material respects.

4. <u>Customary Closing Documents</u>.

   (a) The DIP Agent shall be satisfied that the Obligors have complied with all other customary closing conditions, including, without limitation: (i) evidence of authority; and (ii) obtaining of any material third party and governmental consents necessary in connection with the DIP Facility, the financing thereunder and related transactions. The DIP Agent shall have received prior to the closing all documentation and other information required by bank regulatory authorities under applicable "know-your-customer" and anti-money laundering rules and regulations, including the Patriot Act.

   (b) Execution and delivery by the Obligors of the applicable DIP Loan Documents, satisfactory in all respects to the DIP Agent.

   (c) All instruments and agreements in connection with the DIP Facility among the Obligors, the DIP Agent contemplated by the DIP Loan Documents shall be satisfactory in form and substance to the DIP Agent, and the DIP Lenders shall have received all information and copies of all documents or papers requested by them.

5. <u>Other Conditions</u>.

   (a) The DIP Agent shall have received the required periodic updates of the Budget and weekly variance reports, each in form and substance satisfactory to the DIP Agent, and Obligors shall be in compliance with the updated Budget.

   (b) No Default or Event of Default shall exist under the DIP Facility.

   (c) Representations and warranties shall be true and correct in all material respects at the date of each extension of credit except to the extent such representations and warranties relate to an earlier date.

   (d) The Obligors shall have paid the balance of all fees then payable to the DIP Agent as referenced herein.

   (e) Such other conditions as are reasonably requested by the DIP Agent and customary for

financings of this type shall have been satisfied by the Obligors.

## ANNEX III

### Interest and Certain Fees

| | |
|---|---|
| Interest Rate: | 7.00% |
| Interest Payment Dates: | Interest shall be due on the last business day of each calendar month; interest may be paid in cash or paid-in-kind *(i.e.*, capitalized and added to principal) |
| Default Interest Rate: | The above contract rate plus 2.00% |
| Front End Fee: | 2.00% of the aggregate commitment; fee shall accrue and be paid in full on maturity |