UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SCOTTY'S HOLDINGS, LLC,[1] | ) | Case No. 18-09243-JJG-11 |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| Debtor(s). | ) | |

### APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT OF CHIEF RESTRUCTURING OFFICER WITH LIMITED POWERS

By this application (the "Application"), Scotty's Holdings, LLC, and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Reorganization Cases"), hereby respectfully request entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, authorizing Debtors to retain and employ Hotta Liesenberg Saito LLP ("HLS"), as their Chief Restructuring Officer with limited powers pursuant to Bankruptcy Code §327(a). This Application is supported by (i) the *Verified Statement of Benito Yamazaki in Support of Application for Order Authorizing the Employment of Chief Restructuring Officer With Limited Powers* (the "Yamazaki Statement") attached as **Exhibit B** and incorporated herein by this reference, and (ii) the entire record before the Court in these Reorganization Cases. In further support of this Application, the Debtors state as follows:

---

[1]  The Debtors include Scotty's Holdings, LLC, Case No. 18-09243-JJG-11 (the "Lead Case"); A Pots & Pans Production, LLC, Case No. 18-09244-JJG-11; Scotty's Thr3e Wise Men Brewing Company, LLC, Case No. 18-09245-JJG-11; Scotty's Brewhouse, LLC, Case No. 18-09246-JJG-11; Scotty's Brewhouse Bloomington, LLC, Case No. 18-09248-JJG-11; Scott's Brewhouse West Lafayette, LLC, Case No. 18-09250-JJG-11; Scotty's Indianapolis, LLC, Case No. 18-09251-JJG-11; Scotty's Brewhouse Downtown Indianapolis, Case No. 18-09252-JJG-11; Scotty's Brewhouse Mishawaka, LLC, Case No. 18-09253-JJG-11; Scotty's Brewhouse Fort Wayne, LLC, Case No. 18-09255-JJG-11; Scotty's Brewhouse Carmel, LLC, Case No. 18-09256-JJG-11; Scotty's Brewhouse Butler, LLC, Case No. 18-09257-JJG-11; and Scotty's Brewhouse Waco, LLC, Case No. 18-09258-JJG-11.

**I.      JURISDICTION AND VENUE.**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 83-8(a) of the United States District Court for the Southern District of Indiana (hereinafter "L.R.").

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157, and the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The legal bases for the relief requested herein are Sections 327, 328(a) and 1103(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and S.D. Ind. B-2014.

**II.     RELIEF REQUESTED.**

5. Debtors request entry of the Proposed Order (a) authorizing the Debtors to retain and employ HLS as their Chief Restructuring Officer with limited powers ("CRO") to assist with specific matters relating to the Debtors' Reorganization Cases.

**III.    BASIS FOR RELIEF REQUESTED.**

6. Section 327(a) of the Bankruptcy Code authorizes a debtor to retain and employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons," to represent or assist debtors-in-possession in executing their duties.

7. Section 328(a) of the Bankruptcy Code allows employment under Section 327 "on any reasonable terms and conditions of employment, including on retainer, on an hourly basis,"

among other things, subject to later re-evaluation by the Court. The Debtors therefore seek approval of the retention of HLS under §§ 327 and 328 of the Bankruptcy Code.

8. The Debtors submit that the employment and retention of HLS as CRO is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and other parties in interest, and should, therefore, be approved.

9. The Debtors' proposed debtor-in-possession lender, Sase Kosan K.K. (the "DIP Lender"), is willing to make a post-petition loan to the Debtors. However, one condition of such loan is the retention of a CRO with the powers described in the term sheet executed by the DIP Lender and the Debtors.

10. HLS is well-suited for the role of the CRO in this matter. HLS is an accounting and consulting firm with an office in Indianapolis that provides a variety of financial services on a national and international basis. As evidenced by the Yamazaki Statement, HLS routinely advises clients in distress situations and makes recommendations regarding their clients' business operations, including streamlining operations to reduce expenses.

11. Prepetition, HLS was retained by the DIP Lender to perform a review of the Debtors' financial situation, including their books and records and financial position. HLS completed its prepetition engagement and was paid by the DIP Lender. Other than this engagement, HLS does not have (and has not had) any connection to the Debtors or its insiders. HLS is not currently performing any work for the DIP Lender and is not engaged to do so in the future.

12. Because HLS has already assessed the Debtors' financial condition prepetition and is familiar with the Debtors' business, the Debtors believe the retention of HLS is in the best interest of the estate as there will be minimal (if any) "ramp up" needed and HLS can provide immediate

value to the Debtors. Further, due to HLS's familiarity, HLS's overall fees to the estate will be reduced.

13. By the signature of the authorized representative for the Debtors on this Application, the Debtors expressly acknowledge, understand, and agree to the retention of HLS and the arrangements stated herein, subject only to approval by the Bankruptcy Court.

14. A copy of the retention letter agreement between the Debtors and HLS is attached to the Yamazaki Statement as **Exhibit 2** (the "**Engagement**").

### IV. SERVICES TO BE RENDERED.

15. The Debtors propose to retain HLS to render the following services:

   a. HLS shall provide oversight in connection with the operation, management and the restructuring of the Debtors' business.

   b. HLS shall be entitled to access to all financial records, including books and records and banking records (with electronic access), and Debtors' management shall consult with HLS with respect to any material payments and the preparation of budgets and variance reports.

   c. HLS shall be consulted in connection with, and have ultimate decision-making authority with respect to, the material matters outside of the ordinary course of the Debtors' business, including the assumption or rejection of leases and the disposition of material assets.

   d. HLS shall also be consulted and shall have input on the restructuring of the Debtors' liabilities, including development of a plan of reorganization.

   e. The Debtors' Manager shall keep HLS informed and provide regular reports at HLS's request.

    f. HLS shall be authorized to communicate directly with the DIP Agent, the DIP Lenders, and the Debtors' other creditors.

Except as set forth above, it is not intended that HLS displace current management in all respects. For example, it is not contemplated that HLS will engage in the day-to-day management of the Debtors' restaurant operations or that HLS's authority will be required for ordinary course payments, such as rent, food, alcohol, or other similar categories.

**V. COMPENSATION.**

  16. HLS's compensation will be based on its customary hourly rates applicable to the HLS's clients generally. HLS's compensation would be at the expense of the Debtors' estates. Billing statements will be furnished to the Debtors and subject to approval of the Court. HLS's current hourly rates are described in the Yamazaki Statement and the Engagement and are summarized as follows:

| Name | Title | Hourly Rate |
| --- | --- | --- |
| Benito Yamazaki | Partner | $180 |
| Kenta Nomura | Manager | $150 |

HLS does not anticipate exceeding 60 hours per month under the terms of its engagement. To the extent it anticipates doing so, HLS is required to notify the Debtors prior to incurring such additional time.

  17. HLS may use additional professionals with similar billable rates to those stated above as necessary to efficiently address all matters arising in connection with the HLS's engagement. HLS will disclose all such persons and rates in connection with any fee application submitted to the Court.

18. The terms on which HLS proposes to be retained are reasonable and favorable based upon the market range for comparable professionals, and they are in-line with or below the fees routinely allowed in cases in the Seventh Circuit.

19. The expenses for which HLS ordinarily and customarily is reimbursed by its clients include, but are not limited to, report production, word processing, postage, and travel.

20. HLS has not been paid any amounts prepetition by the Debtors and is not requiring an advance retainer in connection with its engagement.

**VI.   REQUEST FOR APPROVAL OF PERIODIC PAYMENT PROCEDURE.**

21. The Debtors request that the Court allow them to pay HLS periodically from any "fee reserve" funded pursuant to any debtor-in-possession loan (as may be allowed pursuant to the terms of such loan), under the procedures set forth in L.R. B-2014-1(b)(5) (incorporating subsection (b)(4)).

22. Pursuant to L.R. B-2014-1(b)(4)(A), and L.R. B-2014-1(b)(5), the Court may provide for a streamlined procedure for periodic payments of up to 80% of requested fees, and 100% of requested expenses, prior to receiving court approval of any interim or final fees and expenses.

23. The Debtors and HLS propose that draws be made on a monthly basis from the "fee reserve" on a pro rata basis with the Debtors' other professional's fees and costs incurred and sought.

24. Prior to taking any draw from the fee reserve, HLS shall file a Notice of Draw using the CM/ECF event "Notice of Draw on Retainer/Payment of Fees or Expenses Pursuant to L.R. B-2014-1," which sets forth the amount of the proposed draw and contains, as an attachment, a copy of the periodic billing supporting the amount of the draw. The Notice of Draw shall be distributed

6

to the Service List and a copy of the relevant periodic billing shall be delivered to the UST as required by L.R. B-2014-1(b)(4)(C).

25. In accordance with L.R. B-2014-1(b)(4)(C), failure of any party to object to the Notice of Draw shall not affect the party's right to object to the final allowance of fees and expenses; Court approval of the draw procedure does not constitute allowance of fees and expenses. HLS acknowledges that all fees and expenses drawn are subject to disgorgement until the Court allows its final fee application.

## VII. **DISINTERESTED**.

26. Except as disclosed in the Yamazaki Statement and to the best of HLS's knowledge, information and belief, HLS does not have any connections with the Debtors in the Reorganization Cases, the creditors of the Debtors' estates, any other parties-in-interest or their respective attorneys and accountants, the United States Trustee or any person employed by the Office of the United States Trustee. To the best of the Debtors' understanding, the information disclosed by the HLS in the Yamazaki Statement does not preclude the HLS from representing the Debtors under applicable law under Section 327 on the matters identified herein. HLS does not have any connection to the Debtors' secured creditors, landlords, or key suppliers (food, beverage, and alcohol).

27. As further reflected in the Yamazaki Statement and in accordance with 11 U.S.C. §§ 101(14), 327, and 328, HLS is "disinterested"; the HLS does not represent any entity in the Reorganization Cases on matters adverse to the Debtors; HLS does not hold an interest adverse to the Debtors in the Reorganization Cases, and does not represent or hold any interest adverse to the debtors or to the estates. As stated in the Yamazaki Statement, HLS will continue to monitor the

7

case and determine whether any additional disclosures should be made as the cases progress and will update its disclosures as required during the pendency of the Reorganization Cases.

### VIII. NOTICE.

28. Notice of this Application has been provided to the following parties: (a) the Service List, as defined in L.R. B-1000-1(b)(10) and L.R. B-2014-1(b), including (i) the Office of the U.S. Trustee and (ii) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis, excluding insiders); (b) The Huntington National Bank; (c) Rewards Network Establishment Services Inc.; (d) and all parties that, as of the filing of this Application, have requested notice in the Reorganization Cases. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, Debtors respectfully request entry of the Proposed Order, substantially in form attached hereto as **Exhibit A**, granting the requested relief and such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 27th day of December, 2018.

                HESTER BAKER KREBS LLC

                By /s/ John J. Allman
                   John J. Allman
                   One Indiana Square, Suite 1600
                   Indianapolis, IN 46204
                   (317) 833-3030
                   Fax: (317) 833-3031
                   Email: jallman@hbkfirm.com

                *Proposed Attorneys for Debtors*

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 27, 2018, a copy of the foregoing *Application for Order Authorizing the Employment of Chief Restructuring Officer with Limited Powers* was filed electronically.  Notice of this filing will be sent to the following party/parties through the Court's Electronic Case Filing System.  Party/Parties may access this filing through the Court's system.

| | |
|---|---|
| U.S. Trustee | ustpregion10.in.ecf@usdoj.gov |
| Harrison E. Strauss | harrison.strauss@usdoj.gov; lora.l.hurlbert@usdoj.gov |
| Ronald J. Moore | ronald.moore@usdoj.gov |
| John J. Allman | jallman@hbkfirm.com; dadams@hbkfirm.com |
| Jason R. Burke | jburke@bbrlawpc.com; kellis@bbrlawpc.com |
| Christopher C. Hagenow | chagenow@bbrlaw.com; kellis@bbrlawpc.com |
| Aaron E. Davis | aaron.davis@bclplaw.com; kathryn.farris@bclplaw.com; chdocketing@bclplaw.com |
| Anthony J. Jost | tjost@rbelaw.com; baldous@rbelaw.com; tbutton@rbelaw.com |
| Harley K. Means | hkm@kgrlaw.com; kwhigham@kgrlaw.com; cjs@kgrlaw.com; tjf@kgrlaw.com |
| Jay P. Kennedy | jkennedy@kgrlaw.com; tfroelich@kgrlaw.com; srosner@kgrlaw.com; jli@kgrlaw.com |
| Craig S. Ganz | ganzc@ballardspahr.com |
| John R. Humphrey | jhumphrey@taftlaw.com; aolave@taftlaw.com |
| Meredith R. Theisen | mtheisen@rubin-levin.net; atty_mtheisen@bluestylus.com; mralph@rubin-levin.com |
| Deborah Caruso | dcaruso@rubin-levin.com; dwright@rubin-levin.com; jkrichbaum@rubin-levin.com; atty_dcaruso@bluestylus.com |
| John M. Mead | jmead@indylegal.net; cweaver@indylegal.net |
| Jeffrey A. Hokanson | jeff.hokanson@icemiller.com; kathy.peed@icemiller.com |
| John Cannizzaro | john.cannizzaro@icemiller.com; deborah.martin@icemiller.com |
| Amanda K. Quick | amanda.quick@atg.in.gov; darlene.greenley@atg.in.gov |
| Mary J. Fassett | mjf@mccarronlaw.com |

    I further certify that on December 27, 2018, a copy of the foregoing *Application for Order Authorizing the Employment of Chief Restructuring Officer with Limited Powers* will be mailed by first-class U.S. Mail, postage prepaid and properly addressed, to the following:

    N/A.

                                                 /s/ *John J. Allman*
                                                  John J. Allman