Exhibit 2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SCOTTY'S HOLDINGS, LLC, | ) | Case No. 18-09243-JJG-11 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors.[1] | ) | |

**ORDER GRANTING MOTION FOR AN ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN SECURED POST-PETITION FINANCING, AND (II) GRANTING RELATED RELIEF**

Upon the *Motion for an Order (I) Authorizing the Debtors to Obtain Secured Post-Petition Financing, and (II) Granting Related Relief* dated December 27, 2018 (the "Motion") [Dkt No. —89] of Scotty's Holdings, LLC ("Holdings") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the jointly administered chapter 11 cases

---

[1] The Debtors include Scotty's Holdings, LLC, Case No. 18-09243-JJG-11 (the "Lead Case"); A Pots & Pans Production, LLC, Case No. 18-09244-JJG-11; Scotty's Thr3e Wise Men Brewing Company, LLC, Case No. 18-09245-JJG-11; Scotty's Brewhouse, LLC, Case No. 18-09246-JJG-11; Scotty's Brewhouse Bloomington, LLC, Case No. 18-09248-JJG-11; Scott's Brewhouse West Lafayette, LLC, Case No. 18-09250-JJG-11; Scotty's Indianapolis, LLC, Case No. 18-09251-JJG-11; Scotty's Brewhouse Downtown Indianapolis, Case No. 18-09252-JJG-11; Scotty's Brewhouse Mishawaka, LLC, Case No. 18-09253-JJG-11; Scotty's Brewhouse Fort Wayne, LLC, Case No. 18-09255-JJG-11; Scotty's Brewhouse Carmel, LLC, Case No. 18-09256-JJG-11; Scotty's Brewhouse Butler, LLC, Case No. 18-09257-JJG-11; and Scotty's Brewhouse Waco, LLC, Case No. 18-09258-JJG-11.

(the "Cases"), for entry of an order (this "Order") pursuant to sections 105, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and S.D.Ind. B-4001-2 of the Local Rules adopted by the United States Bankruptcy Court for the Southern District of Indiana (the "Court"), seeking, among other things:

(1)     authorization for Holdings (the "Borrower") to (a) obtain postpetition secured debtor-in-possession financing in an aggregate principal amount of up to $600,000 (the "DIP Facility") as set forth in the term sheet attached hereto as Exhibit A (as may be amended, modified or supplemented pursuant to the terms of this Order, the "DIP Term Sheet") between and among the Borrower, the Guarantors (as defined below), Sase Kosan, K.K. (the "DIP Agent"), and the lenders from time to time party to the DIP Facility (the "DIP Lenders"; together with the DIP Agent, the "DIP Parties"), the proceeds of which shall be deposited into a segregated account (the "DIP Funding Account") in the name of the Borrower and pledged to the DIP Agent, and (b) incur the DIP Obligations (as defined in the DIP Term Sheet) (the DIP Term Sheet, together with this Order, and ~~to the extent that the DIP Agent demands that the parties enter into a formal loan agreement prior to the entry of this Order (a "DIP Credit Agreement"), any such loan agreement and~~ any related ~~agreements~~, documents, certificates, instruments, exhibits and schedules delivered or executed from time to time in connection therewith, as amended, restated, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof, collectively, the "DIP Documents");

2

(2)      authorization for each of the Debtors other than the Borrower (collectively, the "Guarantors"; and together with the Borrower, the "DIP Obligors") to guarantee the DIP Obligations as set forth in the DIP Term Sheet;

(3)      authorization for the DIP Obligors to perform their respective obligations the ~~DIP Term Sheet and the other~~ DIP Documents and such other and further acts as may be required in connection therewith;

(4)      authorization for the DIP Obligors to grant valid, enforceable, non-avoidable, automatically and fully perfected security interests, liens and superpriority claims, including allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code and liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code to the DIP Agent, for the benefit of the DIP Parties, in the DIP Collateral (as defined herein) and all proceeds thereof, to secure all DIP Obligations; and

(5)      modification of the automatic stay imposed under section 362 of the Bankruptcy Code, to the extent necessary, to implement and effectuate the terms and provisions of the DIP Documents, but limited solely to the calling of an event of default and terminating any further advances on the DIP Loan.

This Court having found that due and proper notice of the Motion and the hearing on the Motion (the "Hearing") was provided by the Debtors, and having held the Hearing on January 17, 2018 after considering all the pleadings, motions and other papers filed with this Court and the evidence proffered or adduced on the record at the Hearing; and all objections to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, is otherwise fair and reasonable

3

and in the best interests of the Debtors, their creditors, their estates, and all parties-in-interest, represents a sound exercise of the Debtors' business judgment, and is necessary for the continued operation of the Debtors' businesses and preservation of the value of the Debtors' assets; and upon the record of these Cases and after due deliberation and consideration and for good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS**:

A.    *Petition Date*.  On December 11, 2018 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition with this Court commencing a case under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate their businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Cases.

B.    *Jurisdiction and Venue*.   This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334 and S.D.Ind. L.R. 83-8(a) of the United States District Court for the Southern District of Indiana.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory and legal predicates for the relief sought herein are sections 105, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(e) and 507 of the Bankruptcy Code, Bankruptcy Rules  2002, 4001, 6003, 9013 and 9014 and S.D.Ind. B-4001-2 of the Local Rules.

C.    *Committee Formation*.  As of the date hereof, no official committee of unsecured creditors or any other statutory committee (a "<u>Committee</u>") has been appointed in the Cases.

D.    *No Credit on More Favorable Terms*.  Based upon, among other things, the testimony contained in the Blackwell Declaration attached to the Motion, given their current financial condition, financing arrangements and capital structure, the Debtors are unable to

obtain sufficient interim and long-term financing from sources other than the DIP Parties on terms more favorable than under the DIP Facility and the DIP Documents, and are not able to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code.  The Debtors also have been unable to obtain sufficient credit (i) having priority over administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, (ii) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien, or (iii) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Postpetition financing is unavailable to the Debtors without providing the DIP Agent for the benefit of the DIP Parties: (i) the DIP Liens in the DIP Collateral, as provided herein and in the DIP ~~Documents~~Term Sheet with the priorities set forth herein; (ii) the DIP Superpriority Claims (as defined herein); and (iii) the other protections set forth in this Order.  After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to them at this time, and is in the best interests of all of their stakeholders.

    E. *Findings Regarding the DIP Facility*.  Based upon the pleadings and proceedings of record in the Cases, (i) the terms and conditions of the DIP Facility are fair and reasonable, are the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration, (ii) the terms and conditions of the DIP Facility have been negotiated in good faith and at arm's length among the Debtors and the DIP Parties, with the assistance and counsel of their respective advisors, and (iii) any credit extended, loans made, and other financial accommodations extended to the DIP Obligors, including, without limitation, pursuant to this Order, have been allowed, advanced, extended, issued, or

made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code in express reliance upon the protections offered by Bankruptcy Code section 364(e), and (iv) the DIP Facility, the DIP Liens, and the DIP Superpriority Claims, shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

F.      *Notice*.    The Debtors have provided notice of the Hearing and the proposed entry of this Order to: (a) the Service List, as defined in S.D. Ind.B-1000-1(b)(10), including (i) the Office of the United States Trustee and (ii) the holders of the twenty (20) largest unsecured claims against the Debtors; (b) The Huntington National Bank; (c) Rewards Network and (d) Mayer Brown LLP, as counsel to the DIP Agent.  Requisite notice of the Motion and the relief requested thereby and this Order has been provided in accordance with Bankruptcy Rules 2002 and 4001, and no other notice need be provided for entry of this Order.

Based on the foregoing, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      <u>Approval of Order</u>.    The Motion is granted and the DIP Facility is authorized, in each case, subject to the terms and conditions set forth in this Order and the DIP ~~Documents~~<u>Term Sheet</u>.  Any objections to the relief requested in the Motion that have not previously been withdrawn, waived, settled, or resolved and all reservations of rights included therein, are hereby denied and overruled.  This Order shall become effective immediately upon its entry.

**<u>DIP Facility Authorization</u>**

6

2.      Approval of DIP ~~Documents~~Term Sheet; Authority Thereunder.  The DIP Obligors are hereby authorized to enter into, and execute and deliver, the DIP ~~Documents, and such additional documents, instruments, certificates and agreements as may be required or reasonably requested by the DIP Parties to implement the terms or effectuate the purposes of this Order and the DIP Documents.3.      Validity of DIP Documents.  Upon (a) entry of this Order and (b) execution and delivery of the DIP Documents, each of the DIP Documents~~ Term Sheet as a final and binding document, and notwithstanding any statement on the DIP Term Sheet regarding its non-binding effect, the DIP Term Sheet along with this Order shall constitute, and is hereby deemed to be, the legal, valid and binding obligation of the DIP Obligors party thereto, enforceable against the DIP Lender and each such DIP Obligor, its estate, and any successor thereto, in accordance with its terms.  No obligation, payment, transfer or grant of security under the DIP ~~Documents~~Term Sheet or this Order with respect to the DIP Facility shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

3.      ~~4.~~Authorization to Borrow.  Upon entry of this Order, the DIP Borrowers are immediately authorized to borrow under the DIP Facility an aggregate principal amount not to exceed $600,000, subject to the terms and conditions set forth in this Order and the DIP ~~Documents~~Term Sheet and in accordance with the Approved Budget, and the DIP Guarantors ~~are authorized~~shall be deemed to guarantee the DIP Obligations.  The DIP Parties shall have no obligation to make any loan or advance under the DIP Documents unless all of the conditions precedent to the making of such extension of credit under this Order and the DIP ~~Documents~~Term Sheet have been satisfied in full or waived.  Once repaid or prepaid, the DIP Loans incurred under the DIP Facility may not be re-borrowed.

4.    5.  Payment of DIP Costs and Expenses.  Subject to the limitations set forth below, the DIP Obligors are hereby authorized to and shall pay all fees, costs, expenses, premiums and other amounts as and when payable under the terms of the DIP ~~Documents~~Term Sheet and all other reasonable and documented out-of-pocket costs and expenses of the DIP Parties in accordance with the terms of this Order and the DIP ~~Documents~~Term Sheet as and when such amounts become due and payable, subject to receiving a written invoice therefor. None of such fees, costs, expenses or other amounts shall be subject to Court approval (subject to the limitations below) or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; provided, however, that copies of any such invoices provided to the Debtors shall be provided contemporaneously to the U.S. Trustee; provided, further, however, that such invoices may be in detailed summary form and may contain redactions, and in no event shall such invoices be required to contain time entries, and for the avoidance of doubt, the provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  If the Debtors or the U.S. Trustee objects to the reasonableness of the fees and expenses of any DIP Parties, and such objection cannot be resolved within ten (10) calendar days of receipt of such invoices, the Debtors or the U.S. Trustee shall file with the Court and serve on such DIP Parties an objection limited to the reasonableness of such fees and expenses and detailing with specificity which fees and/or expenses are being objected to (each, a "Fee Objection").  Professionals for the DIP Parties shall not be required to comply with the U.S. Trustee fee guidelines or submit invoices to the Court.  The professional fees of the DIP Parties shall not be subject to the provisions of sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.  The Debtors shall pay in accordance with the terms and conditions of this Order, and

8

subject to the terms of the DIP ~~Documents~~Term Sheet, within ten (10) calendar days after receipt of the applicable invoice (a) the full amount invoiced if no Fee Objection has been timely filed, and (b) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed.  All such unpaid fees, costs, expenses and other amounts owed or payable to the DIP Parties shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Order and the DIP ~~Documents~~Term Sheet.

5. ~~6.~~ CRO.  The Debtors are hereby authorized to retain a CRO (as defined in the Term Sheet) for the purposes stated therein subject to further application for retention by the CRO after the opportunity for notice and hearing.  The Debtors shall be authorized to pay the CRO pursuant to (i) any order authorizing the use of cash collateral, to the extent provided for therein, or (ii) from proceeds of the DIP Loan, after approval of such fees and costs pursuant to any application granted by the Court.

6. ~~7.~~ Indemnification.  The Debtors are hereby authorized to and hereby agree to indemnify and hold harmless the DIP Parties (in their capacity as such) and, solely in their capacities as such, each of their respective successors, permitted assigns, affiliates, subsidiaries, partners, representatives, agents, advisors, officers, directors, and managers (each, an "Indemnified Party") from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses (including, without limitation, reasonable and documented out-of-pocket attorney's fees) or disbursements of any nature whatsoever which may be imposed on, incurred by or asserted against an Indemnified Party in any way relating to or arising out of any of the DIP ~~Documents~~Term Sheet or any other document contemplated hereby or thereby or the transactions contemplated thereby or by this Order or any action taken or

omitted by the DIP Parties under ~~any of~~ the DIP ~~Documents~~Term Sheet or any document contemplated hereby or thereby; <u>provided</u> that the DIP Borrower shall not have any obligation to indemnify and hold harmless any Indemnified Party under this paragraph with respect to any matter resulting from (a) the fraud, gross negligence, bad faith or willful misconduct of such Indemnified Party or (b) violations by such Indemnified Party of this Order, or from breaches by such Indemnified Party of the DIP ~~Documents~~Term Sheet, in each case as determined by a court of competent jurisdiction in a final non-appealable judgment or order.  No Indemnified Party shall have any liability (whether direct or indirect, in contract, tort or otherwise) to any Debtor or any of its subsidiaries or any shareholders or creditors of the foregoing for or in connection with the transactions contemplated hereby, except to the extent such liability is determined by a court of competent jurisdiction in a final non-appealable judgment or order to have resulted from such Indemnified Party's (x) fraud, gross negligence, bad faith or willful misconduct or (y) violations of this Order or from material breaches of the DIP ~~Documents~~Term Sheet.  All indemnities made or owed by any Debtor to the Indemnified Parties shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Order and the DIP ~~Documents~~Term Sheet.

<u>7.</u>    ~~8.~~  <u>DIP Superpriority Claims</u>.  Pursuant to Bankruptcy Code section 364(c)(1), the DIP Obligations shall constitute superpriority administrative expense claims ("<u>DIP Superpriority Claims</u>") against each of the DIP Obligors, on a joint and several basis, subject to the Carve-Out which shall have priority in payment over any and all administrative expenses at any time existing or arising against the obligors thereof, of any kind or nature whatsoever, including, without limitation, the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330,

331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 and 1114 or otherwise, including those resulting from the conversion of any of the Cases pursuant to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, that to the extent that this Court grants a priority claim in respect of the diminution in value of the collateral secured by the Pre-Petition Credit Facilities (as defined in the DIP Term Sheet), such claim may be *pari passu* with the DIP Superpriority Claims.

8.    9. DIP Liens.

(a)    As security for the DIP Obligations, immediately upon, and effective as of entry of this Order, the DIP Agent, for the benefit of the DIP Parties, is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens (collectively, the "DIP Liens") on all DIP Collateral as collateral security for the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of the DIP Obligations.  The term "DIP Collateral" means all assets and properties (whether tangible, intangible, real, personal, or mixed) of the DIP Obligors, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the DIP Obligors (including under any trade names, styles, or derivations thereof), and whether owned or consigned by or to, or leased from or to, or hereafter acquired by, the DIP Obligors, and regardless of where located, before or after the Petition Date, including, for the avoidance of doubt, the Fee Reserve and the DIP Funding Account (as defined in the DIP Term Sheet).

(b)    To the fullest extent permitted by the Bankruptcy Code or applicable law, any provision of any lease, loan document, easement, use agreement, proffer,

11

covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or the payment of any fees or obligations to any entity in order for any of the DIP Borrowers or DIP Guarantors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral, shall have no force or effect with respect to the DIP Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any DIP Obligor, in favor of the DIP Parties in accordance with the terms of this Order and the DIP ~~Documents~~Term Sheet.

9. ~~10.~~ Priority of DIP Liens.

(a) To secure the DIP Obligations, immediately upon, and effective as of entry of this Order, the DIP Agent, for the benefit of the DIP Parties, is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected DIP Liens in the DIP Collateral as follows:

(i) pursuant to section 364(c)(2) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in all DIP Collateral that is not otherwise subject to a valid, perfected and non-avoidable security interest or lien as of the Petition Date; and

(ii) pursuant to section 364(c)(3) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected junior liens (the "Junior DIP Liens") on and security interests in all DIP Collateral (other than as set forth in clauses (i) and (iii) of this paragraph) that is subject to valid, existing and perfected liens as of the Petition Date.

(b) Except as expressly set forth herein or in the DIP ~~Documents~~Term Sheet, the DIP Liens and the DIP Superpriority Claims: (i) shall not be made junior to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in any of the Cases or any successor cases, and shall be valid and enforceable against the DIP Obligors, their estates, any trustee or any other estate representative appointed or elected in the Cases or any successor cases and/or upon the dismissal of any of the Cases or any successor cases, (B) any lien

that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

10.    11. Use of Proceeds of DIP Facility.

a.    General.  Except as otherwise provided herein or approved by the DIP Agent, the proceeds of the DIP Facility shall be used only in compliance with the Approved Budget (subject to any Permitted Variance).

b.    Initial Budget.  Attached as Exhibit B hereto and incorporated by reference herein is a 13-week statement that includes a statement of receipts (on a cumulative basis) and disbursements for the next 13 weeks for the Debtors, broken down by week, including all anticipated case uses for such period (the "Initial Budget").  The Initial Budget, together with any adequate protection payments ordered to be paid to Huntington Bank or Rewards Network (in an amount not to exceed their respective ordinary contractual payments due) shall be deemed an "Approved Budget."

c.    Proposed and Approved Budget.  On the first and third Wednesday of each month, the Debtors shall deliver to the DIP Agent, following the commencement of the then applicable Approved Budget, an updated 13-week statement for the 13 weeks commencing immediately following the 13-week period covered by the then applicable Approved Budget (the "Proposed Budget").  Each Proposed Budget shall be substantially in the form as the Initial Budget and reasonably satisfactory to the DIP Agent.  Each Proposed Budget shall become effective when approved by the DIP Agent; provided, that the DIP Agent shall be deemed to have approved a Proposed Budget unless the DIP Agent, shall have objected to such Proposed Budget within five (5) business days of receiving such Proposed Budget; provided further that, to the

13

extent the DIP Agent objects to any Proposed Budget and any such objection is unresolved prior to the end of the 13th week of the Approved Budget, then a hearing with respect to any such objection shall be conducted by the Court.  Any such approved Proposed Budget shall be deemed an "Approved Budget."

        d.    Funding of Professional Fees. The Debtors may use proceeds to fund a professional fee reserve in a segregated account of the Borrower (a "Fee Reserve") in an amount up to $10,000 per week from the Petition Date to be held in a segregated account of the Debtors and which may be accessed for the sole purpose of paying the fees and expenses of the Debtors' counsel retained in the Cases as authorized by any order of this Court.

        e.    Variance Reporting. Together with each Proposed Budget, the Debtors shall deliver to the DIP Agent a variance report (a "Variance Report") which shall set forth (i) a comparative reconciliation, on a line by line basis, of actual cash receipts and disbursements against the cash receipts and disbursements forecasted in the initial Budget, and the percentage variance thereof, for (A) the weekly period ended on (and including) the immediately preceding Sunday and (B) the cumulative period to date, (ii) a written explanation of such variances, and (iii) projections for the following 13 weeks, including a rolling cash receipts and disbursements forecast for such period.

        f.    Permitted Variances.  For the period commencing on the Petition Date and ending on the last day of each applicable 2-week period covered by a Variance Report (each such period, a "Test Period").  For each Test Period, payments for such cumulative period to date shall not exceed 112% of the amounts, on an aggregate basis, set forth for such cumulative period to date and receipts for such cumulative period to date shall not be less than

88% of the amounts, on an aggregate basis, set forth for such cumulative period (the "Permitted Variances").

        11.    12. Carve-Out.

        a.    As used in this Order, the term "Carve-Out" shall mean the sum of the following (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), and (ii) after the occurrence and during the continuance of an Event of Default (as defined below) (a) fees and expenses projected in the Budget and incurred by the Obligors' professionals prior to delivery of notice of an Event of Default and allowed by the Bankruptcy Court (the "**Carve-Out Notice**"), and (b) after delivery of a Carve-Out Notice, an amount not exceeding $175,000 in the aggregate, to pay any fees or expenses incurred by the Obligors' professionals, and (c) after delivery of a Carve-Out Notice, an amount not exceeding $25,000 in the aggregate, to pay any fees or expenses incurred by professionals retained by the Committee, provided that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described above.

        b.    For the avoidance of doubt, the Carve-Out shall be senior to all liens and claims securing the DIP Facility.

        c.    The DIP Parties shall not be (i) responsible for the direct payment or reimbursement of any fees or disbursements of any professional incurred in connection with the Cases or any successor cases under any chapter of the Bankruptcy Code (other than as provided with respect to the Fee Reserve and the Carve-Out), or (ii) obligated in any way to compensate, or to reimburse expenses of, any professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

15

12.    13. Limitation on Use of DIP Facility Proceeds.  Notwithstanding anything herein to the contrary, no portion of the Carve-Out, DIP Facility, or DIP Collateral, shall include, apply to, or be available for any fees, costs or expenses incurred by any party, including the Debtors or any Committee, in connection with any of the following: (a) the investigation (including by way of examinations or discovery proceedings), initiation, assertion, joining, commencement, support or prosecution of any claims, counter-claims, causes of action, adversary proceedings, applications, motions, objections, defenses, or other contested matters against any of the DIP Parties, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns, in each case in their respective capacities as such and with respect to any contested matter, adversary proceeding, or other contested matter challenging (each, a "Loan Party Claim"), including, (i) investigating or challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Obligations, DIP Superpriority Claims or security interests and liens of the DIP Parties in respect thereof, (ii) investigating or asserting any so-called "lender liability" claims and causes of action against the DIP Parties; and (iii) investigating or asserting any action seeking to invalidate, set aside, avoid the DIP Obligations.

13.    14. Bankruptcy Code Section 506(c) Waiver.  The Debtors shall irrevocably waive, and shall be prohibited from asserting any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection

with the preservation, protection or enhancement of, or realization by the DIP Parties upon the DIP Collateral.

14.    15. No Marshaling/Application of Proceeds.  The Debtors irrevocably waive, and shall be prohibited from, any request that the DIP Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral.

15.    16. Disposition of Collateral.  Except as expressly permitted by the DIP DocumentsTerm Sheet, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral other than in the ordinary course of business without the prior written consent of the CRO.

16.    17. Subsequent Financing.  Except as expressly permitted by the DIP DocumentsTerm Sheet, the Debtors shall not obtain credit or incur debt pursuant to section 364(b), 364(c), or 364(d) of the Bankruptcy Code other than in the ordinary course of business without an order of the Court or the prior written consent of the DIP Agent, unless all amounts owing under the DIP Loan will be satisfied in full from the proceeds of such financing upon its closing.

17.    18. Automatic Effectiveness of Liens.  This Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens, and such liens shall attach and become valid, perfected, binding, enforceable, non-avoidable and effective liens by operation of law as of the date hereof without any further action by the Debtors or the DIP Parties, and without the necessity of executing, filing or recording any financing statements, security agreements, vehicle lien applications, mortgages, filings with a governmental unit (including, without limitation, the U.S. Patent and Trademark Office or the Library of Congress), or other documents or the taking of any other actions

17

(including, for the avoidance of doubt, entering into any deposit account control agreement or taking possession of any collateral) to validate or perfect (in accordance with applicable law) such liens, or to entitle the applicable Debtor or DIP Party the priorities granted herein.  Any property or assets or other items of collateral constituting DIP Collateral which are in the possession of a third party (or its agents or bailees) or under the control (as defined in the Uniform Commercial Code) of a third party as at the Petition Date shall at all times be held by such party as gratuitous bailee for the benefit of the DIP Agent and the other DIP Parties.  If the DIP Agent hereafter requests that the Debtors execute and deliver financing statements, security agreements, pledge agreements, control agreements, collateral assignments, mortgages, or other instruments and documents considered by the DIP Agent to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens, the Debtors are hereby authorized to execute and deliver such financing statements, security agreements, pledge agreements, control agreements, mortgages, collateral assignments, instruments, and documents, and the DIP Agent is hereby authorized to file or record such documents in its discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date hereof; provided, however, no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens.  The DIP Agent, in its sole discretion, may file a photocopy of this Order as a financing statement with any filing or recording office or with any registry of deeds or similar office in addition to, or in lieu of, such financing statements, notices of liens, or similar statements, and any such filing, recording, or similar office is directed to accept such filing as a financing statement.

18.    19. Automatic Stay.  Subject to the terms set forth herein, the automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to permit,  the DIP Parties, upon the occurrence and during the continuance of any Event of Default (under and as defined in the DIP Documents Term Sheet, a "DIP Event of Default"),  to (i) prohibit the DIP Borrower from making any further withdrawals under the DIP Facility; (ii) declare the termination, reduction, or restriction of any individual commitments of any DIP Lender to make further DIP Loans; and (iii) declare the unpaid principal amount of all outstanding DIP Loans, all interest accrued and unpaid thereon, and all other DIP Obligations to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the DIP Obligors.  This Court shall hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.  The delay or failure to exercise rights and remedies under the this Order or the DIP Documents Term Sheet by the DIP Parties shall not constitute a waiver of its rights hereunder, thereunder or otherwise, unless such waiver is pursuant to a written instrument executed in accordance with the terms of this Order and the DIP Documents Term Sheet, as applicable.

19.    20. Binding Effect.  The provisions of this Order shall inure to the benefit of the Debtors, the DIP Parties, and their respective successors and assigns, and, shall be binding upon the Debtors, the DIP Parties, any Committee, and any and all other creditors of the Debtors or other parties in interest and their successors and assigns, including without limitation, any trustee hereafter appointed for the estate of any of the Debtors, whether in these Cases or in the event of a conversion of any of the Cases to a liquidation under chapter 7 of the Bankruptcy Code or dismissal of any of the Cases.  Such binding effect is an integral part of this Order.  Further,

upon entry of this Order, the DIP Obligations shall constitute allowed claims for all purposes in each of the Cases.

20. 21. Survival. The terms and provisions of this Order and any actions taken pursuant hereto, including but not limited to the DIP Superpriority Claims and the DIP Liens, granted pursuant to this Order or the DIP Documents Term Sheet, shall survive the entry of any order: (a) confirming any chapter 11 plan in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; or (c) dismissing any of the Cases or any successor cases, and the terms and provisions of this Order shall continue in full force and effect notwithstanding the entry of any such order. Such claims and liens shall maintain their priority as provided by this Order and the DIP Documents Term Sheet, as applicable, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted) and discharged or otherwise treated under a chapter 11 plan. In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth in the DIP Documents Term Sheet unless agreed to by and among the DIP Obligors and the DIP Parties.

21. 22. Modifications of DIP Documents Term Sheet. Subject to the limitations set forth below, the DIP Obligors and the DIP Parties are hereby authorized to implement, in accordance with the terms of the DIP Documents Term Sheet, any non-material modifications or amendments (including without limitation, any change in the number or composition of the DIP Lenders or the DIP Agent) of the DIP Documents Term Sheet without further notice, motion or application to, order of or hearing before, this Court. Any proposed material modification or amendment to the DIP Documents Term Sheet shall (a) be filed on the

Court's docket and (b) provide parties-in-interest five (5) business days from the date of filing of such material modification or amendment to object in writing to such amendment, and if no objections are received, shall be submitted under certification of counsel; provided, that any forbearance from, or waiver of, (x) a breach by the DIP Obligors of a covenant, representation or any other agreement or (y) a default or a DIP Event of Default shall not require an order of this Court.  If no objections are timely received during such five (5) business day notice period, the DIP Obligors, the DIP Agent and the DIP Lenders are authorized and empowered to implement, in accordance with the terms of the DIP ~~Documents~~Term Sheet, such material modification or amendment, without further notice, hearing or approval of this Court.  Any proposed material modification or amendment to the DIP ~~Documents~~Term Sheet that is subject to a timely filed objection in accordance with this paragraph shall be subject to further order of this Court.

22.    ~~23.~~ Insurance Policies.  Upon entry of this Order, on each insurance policy maintained by the DIP Obligors which in any way relates to the DIP Collateral: (a) the DIP Agent and the DIP Lenders shall be, and shall be deemed to be, without any further action by or notice to any person, named as additional insureds; and (b) the DIP Agent, on behalf of the DIP Lenders, shall be, and shall be deemed to be, without any further action by or notice to any person, named as a loss payee.

23.    ~~24.~~ Protection Under Section 364(e) of the Bankruptcy Code.  The DIP Parties have acted in good faith in connection with this Order and their reliance on this Order is in good faith.  Based on the record of these Cases, and in accordance with section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the (a) validity of any DIP Obligations owing to the DIP Parties incurred prior to the actual receipt by the DIP

21

Agent of written notice of the effective date of such reversal, modification, vacation or stay, or (b) validity or enforceability of any DIP Loans or other advances previously made or any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP ~~Documents~~Term Sheet with respect to any DIP Obligations owing to the DIP Parties. Notwithstanding any such reversal, modification, vacation or stay, any incurrence of DIP Obligations prior to the actual receipt by the DIP Agent of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Order, and the DIP Parties shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Order, and the DIP ~~Documents~~Term Sheet with respect to the incurrence of DIP Obligations.

24.    ~~25.~~ Effect of Dismissal or Conversion of Cases.  If the Cases are dismissed or converted, then such dismissal or conversion of the Cases shall not affect the rights of the DIP Parties under this Order and the DIP ~~Documents~~Term Sheet, and all of the respective rights and remedies thereunder of the DIP Parties shall remain in full force and effect as if the Cases had not been dismissed or converted.  If an order dismissing any of the Cases is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that: (a) the DIP Liens and DIP Superpriority Claims granted to and conferred upon the DIP Parties and the protections afforded to the DIP Parties pursuant to this Order and the DIP ~~Documents~~Term Sheet shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations shall have been paid and satisfied in full in cash (and that such DIP Liens, DIP Superpriority Claims and other protections shall, notwithstanding such dismissal, remain binding on all interested parties); and (b) to the greatest extent permitted by applicable

law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens and DIP Superpriority Claims.

25. 26. Credit Bidding. The DIP Agent shall have the right to credit bid as part of any asset sale process and shall have the right to credit bid the full amount of the DIP Obligations during any sale of the DIP Collateral (in whole or in part), including without limitation, sales pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)–(iii) of the Bankruptcy Code. In any credit bid, the DIP Agent shall include (x) a cash amount sufficient to pay the Carve-Out, and (y) a cash reserve for the payment of obligations secured by senior liens that were valid and perfected on the Petition Date.

26. 27. No Third-Party Rights. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary other than the DIP Parties.

27. 28. Limitations on Liability. In determining to make extensions of credit under the DIP Facility or in exercising any rights or remedies as and when permitted pursuant to this Order, the DIP DocumentsTerm Sheet, none of the DIP Parties or any successor shall be deemed to be in control of the operations of the Debtors or any affiliate (as defined in section 101(2) of the Bankruptcy Code) of the Debtors, or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or any affiliate of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq*., as amended, or any similar foreign, federal, or state statute). Furthermore, nothing in this Order or the DIP DocumentsTerm Sheet shall in any way be construed or interpreted to impose or allow

the imposition upon the DIP Parties or any successor of any liability for any claims arising from the prepetition or postpetition activities of the Debtors, including any and all activities by the Debtors in the operation of their business in connection with the Debtors' restructuring efforts, except to the extent caused by their bad faith, gross negligence, or willful misconduct.

28.    29. Findings of Fact and Conclusions of Law.  This Order constitutes the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, and shall take effect and be fully enforceable immediately upon entry hereof.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

29.    30. Entry of this Order; Waiver of Stay.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024, any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

30.    31. Jurisdiction.  The Bankruptcy Court shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, either the DIP Facility or DIP Documents Term Sheet.

31.    32. Controlling Effect of Order.  To the extent any provision of this Order conflicts with the Motion or any DIP Document, the provisions of this Order shall control.

32.    33. Service.  Service of this Order shall be made upon the parties described in paragraph F of this Order, any Committee (if appointed), and any person who, as of the date hereof, has filed a notice pursuant to Bankruptcy Rule 2002.

# # #

## EXHIBIT A

**[DIP TERM SHEET]**

**EXHIBIT B**

**INITIAL BUDGET**

Document comparison by Workshare 9 on Monday, January 7, 2019 3:15:31 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DMS/ACTIVE/55292517/5 |
| Description | #55292517v5<ACTIVE> - Scotty's - proposed interim order for DIP loan |
| Document 2 ID | interwovenSite://DMS/ACTIVE/55292517/6 |
| Description | #55292517v6<ACTIVE> - Scotty's - proposed order for DIP loan |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 75 |
| Deletions | 76 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 151 |